UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                                                        Crim. No. 25-879 JB

**HERIBERTO SALAZAR AMAYA**, *et al.*,

    Defendants.

## UNITED STATES' OPPOSED MOTION FOR JOINDER OF DEFENDANTS[1]

This matter comes before the Court upon a complex, sixteen-Defendant, thirty-one count, continuing criminal enterprise and conspiracy Superseding Indictment, Doc. 225 ("SS Indictment"), where, only two months into the case, the Court has set multiple trial dates, effectively severing defendants. As the Court correctly noted at the hearing on June 12, 2025, any severance issues should be dealt with head on, and not via motions to continue. *See* Doc. 213. Despite that admonition from the Court, Defendants have effectively worked a severance in contravention of law and this Court's guidance. *See* Docs. 217,[2] 218,[3] and 221.[4] The United States hereby moves this Court to rejoin all remaining[5] Defendants for trial under Federal Rule of Criminal Procedure 8. This request should be granted for the reasons that follow.

---

[1] Given the nature of this motion, the United States assumes that Defendant Alex Anthony Martinez will oppose.
[2] Motion to Continue by Defendants Brian Sanchez, Francisco Garcia, Nicholas Tanner, Victor Montoya, Cesar Acuna-Moreno, Jose Luis Marquez, Alan Singer, David Anesi, David Lopez, Bruce Sedillo, George Navarrete-Ramirez, and Heriberto Salazar Amaya.
[3] Motion to Continue by Defendant Alex Anthony Martinez.
[4] Motion to Continue by Defendant Kaitlyn Young.
[5] As of the date of this filing, three defendants, Jose Luis Marquez, Bruce Sedillo, and Brian Sanchez, have pleaded guilty.

## I. BACKGROUND

### A. The Offense Conduct

The Heriberto Salazar Amaya ("HSA") drug trafficking organization ("DTO") is a Mexican poly-substance drug trafficking organization that operated in Albuquerque, New Mexico, Denver, Colorado, Phoenix, Arizona, Las Vegas, Nevada, Salem, Oregon, and Layton, Utah, among other places. The DEA has been investigating the HSA DTO and its various levels of operation since 2024. Through physical surveillance, undercover operations, prospective location information warrants, trackers, financial analyses, and other special investigative techniques, DEA agents have learned that the basic structure of the HSA DTO is framed around HSA receiving orders for drugs from drug customers and dispatching couriers to deliver the drugs. The couriers typically followed a pattern involving load vehicles and stash locations, coordinated by HSA, to conduct bulk deliveries across several metropolitan areas.

### B. The Charges and Procedural Posture

On April 24, 2025, the United States charged fourteen (of the now sixteen) Defendants in a twelve-count indictment with: Count 1: 21 U.S.C. § 846: Conspiracy; Counts 2, 3, and 9: 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(vi): Distribution of 400 Grams and More of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide); 18 U.S.C. § 2: Aiding and Abetting; Counts 4 and 6: 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(vi): Distribution of 400 Grams and More of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide); Counts 5 and 7: 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(vi): Possession with Intent to Distribute 400 Grams and More of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide); Count 8: 18 U.S.C. § 924(c)(1)(A)(i): Possessing a Firearm in Furtherance of a Drug Trafficking Crime; Count 10: 8 U.S.C. §§ 1326(a) and (b): Reentry of a Removed Alien; Count 11: 8 U.S.C. § 1324a(a)(1)(A):

Unlawful Employment of Illegal Alien; and Count 12: 8 U.S.C. § 1324(a)(1)(A)(v)(I): Conspiracy to Harbor Illegal Aliens. *See* Doc. 26.[6]

In the weeks after, waves of initial appearances, arraignments, and detention hearings followed, with Defendant Heriberto Salazar Amaya finally rounding out the roster on May 23, 2025. *See* Docs. 44, 63–65, 67, 71–72, 83, 87, 113, 117–121, 129, 142, 144, 148, 150, 162, 165, 172, 173, 175, 183, and 188. With this month-long magistrate court session, came seven separate discovery orders. *See* Docs. 68, 123, 146, 163, 171, 184, and 190. Given the staggered nature of these hearings, and the Court's corresponding deadlines, on May 13, 2025, the United States moved to extend the first discovery order to correspond with all Defendants. *See* Doc. 154. On May 13, 2025, the United States also moved to designate this matter as complex and further requested to submit a proposed scheduling order. Out of the fourteen originally indicted Defendants, only three initially opposed. Doc. 207. One of those has since pled guilty. Doc. 272.

On May 27, 2025, the Court set trial to begin for all Defendants on June 23, 2025. Doc. 193. The next day, the Court set a hearing on the United States' pending motions for June 12, 2025. Doc. 197. At that hearing, the Government and nine Defendants supported continuing the trial. *See* Doc. 213. Only three Defendants (Alex Anthony Martinez, Kaitlyn Young, and Jose Luis Marquez) actively argued against a complex case designation at that hearing. *Id*. The Court nonetheless declined to declare the case complex at that point[7] or continue the June 23, 2025 trial setting, just eleven days therefrom. The Court advised that if the parties did not want the June 23rd setting, the Court would need a motion to continue. Even with the Court expressing its preference for continuance over complex case designation for this multi-state conspiracy case with the

---

[6] As part of the operation discussed herein, law enforcement filed three criminal complaints on defendants not included in the initial indictment.
[7] The Court acknowledged that a superseding indictment, which was in the works at the June 12th hearing, may change the landscape and that the Court may come back to the complex designation at a later date. *See* Doc. 213.

3

voluminous discovery attendant thereto. The Court explicitly noted that it disfavored continuance motions being used as a vehicle to sever Defendants. Unfortunately, that is exactly what has happened.

On June 16, 2025, with a trial date still set for June 23, 2025, the United States moved for a definite trial setting *for all Defendants*. Doc. 216. The next day, on June 17, 2025, Defendants Heriberto Salazar Amaya, Cesar Acuna-Moreno, Bruce Sedillo, Vincent Montoya, Francisco Garcia, David Anesi, George Navarrete-Ramirez, Jose Luis Marquez, Nicholas Tanner, Brian Sanchez, Alan Singer, and David Altamirano Lopez moved to continue the June 23, 2025 trial to a date in October. Doc. 217. Then, one day later, on June 18, 2025, Defendant Alex Anthony Martinez moved for a different trial setting, on July 21, 2025. Doc. 218. Without addressing the United States' motion, which applied to all Defendants, the Court granted Defendant Alex Anthony Martinez's request. Doc. 219. As for the other Defendants, the Court then granted their continuance, setting their trial for October 21, 2025. Doc. 220. In doing so, the Court severed Defendant Alex Anthony Martinez. Shortly after the Court's *de facto* severance, Defendant Kaitlyn Young joined Defendant Alex Anthony Martinez. Docs. 221–22. The United States' request to try all Defendants together went unaddressed and is still pending.

On June 25, 2025, the United States christened the SS Indictment, joining sixteen Defendants with thirty-one counts as follows:

Count 1: 21 U.S.C. § 848(a): Continuing Criminal Enterprise;

Count 2: 21 U.S.C. § 846: Conspiracy;

Counts 3, 4, 7, 10, 11 and 12: 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(vi): Distribution of 400 Grams and More of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide); 18 U.S.C. § 2: Aiding and Abetting;

Count 5: 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(vi): Distribution of 400 Grams and More of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide);

Counts 6 and 13: 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(vi): Possession with Intent to Distribute 400 Grams and More of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide);

Counts 8, 17, 22, 23 and 24: 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(vi): Possession with Intent to Distribute 400 Grams and More of Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide); 18 U.S.C. § 2: Aiding and Abetting;

Counts 9, 14 and 16: 18 U.S.C. § 924(c)(1)(A)(i): Possessing a Firearm in Furtherance of a Drug Trafficking Crime;

Count 15: 21 U.S.C. §§ 841(a)(1) and (b)(1)(C): Possession with Intent to Distribute Fentanyl (N-phenyl-N-[1-(2-phenylethyl)-4-piperidinyl] propanamide);

Counts 18 and 25: 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(viii): Possession with Intent to Distribute 500 Grams and More of a Mixture and Substance Containing Methamphetamine; 18 U.S.C. § 2: Aiding and Abetting;

Counts 19 and 26: 21 U.S.C. §§ 841(a)(1) and (b)(1)(A)(i): Possession with Intent to Distribute One Kilogram and More of a Mixture and Substance Containing Heroin; 18 U.S.C. § 2: Aiding and Abetting;

Count 20: 21 U.S.C. §§ 841(a)(1) and (b)(1)(C): Possession with Intent to Distribute a Mixture and Substance Containing Cocaine; 18 U.S.C. § 2: Aiding and Abetting;

Count 21: 18 U.S.C. § 924(c)(1)(A)(i): Possessing a Firearm in Furtherance of a Drug Trafficking Crime; 18 U.S.C. § 2: Aiding and Abetting.

Count 27: 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(ii): Possession with Intent to Distribute 500 Grams and More of a Mixture and Substance Containing Cocaine; 18 U.S.C. § 2: Aiding and Abetting;

Count 28: 21 U.S.C. §§ 841(a)(1) and (b)(1)(C): Possession with Intent to Distribute a Mixture and Substance Containing Cocaine; 18 U.S.C. § 2: Aiding and Abetting;

Count 29: 8 U.S.C. §§ 1326(a) and (b): Reentry of a Removed Alien;

Count 30: 8 U.S.C. § 1324a(a)(1)(A) and (f)(1): Unlawful Employment of Illegal Alien; and

Count 31: 8 U.S.C. § 1324(a)(1)(A)(v)(I): Conspiracy to Harbor Illegal Aliens.

Doc. 225.

The United States brought Count 1, which is the continuing criminal enterprise charge, against Defendants Heriberto Salazar Amaya, Cesar Acuna-Moreno, Bruce Sedillo, Vincent Montoya, Francisco Garcia, David Anesi, George Navarrete-Ramirez, Alex Anthony Martinez, Jose Luis Marquez, Kaitlyn Young, David Altamirano-Lopez, Roberta Herrera, and Misael Lopez-Rubio. *Id*. That charge incorporates Counts 3 through 28, as well as Manner and Means numbers 2, 3, and 6 through 41. Count 2, the overarching drug conspiracy, which features all 41 Manner and Means, is charged against all Defendants. *Id*.

On July 1, 2025, Defendant Jose Luis Marquez pleaded guilty. *See* Doc. 272. On July 2, 2025, Defendant Bruce Sedillo pleaded guilty. *See* Doc. 285. On July 3, 2025, Defendant Brian Sanchez pleaded guilty. *See* Doc. 291.

On July 2, 2025, Defendant Alex Anthony Martinez informed the United States via email that he plans to move the Court for a *James* hearing. As the Court knows, this hearing can substantively affect the rights of all Defendants, yet Defendant Alex Anthony Martinez appears poised to litigate this issue individually.

On July 2, 2025, Defendant Kaitlyn Young notified the United States that she intends to continue her July 21, 2025 trial setting and will request to be placed on the same trial track as all other Defendants, leaving only Defendant Alex Anthony Martinez set for trial on July 21, 2025.

In sum, at the time of this Motion, which is approximately two months into this massive, intertwined case, the United States has dropped the number of Defendants pending trial from sixteen to thirteen, well on its way to proposing to the Court one trial setting with single digit Defendants. Yet, a lone Defendant, Alex Anthony Martinez, has managed to extricate himself from the balance of the case by separately scheduling his trial, effectively dictating to this Court and the United States how a complex continuing criminal enterprise and conspiracy matter should be tried and requiring multiple such trials. Multiple substantive hearings impacting all Defendants,

like a *James* hearing, and multiple trials on the same facts should not be required or permitted based upon the maneuvering of a lone Defendant.

## II.   ARGUMENT

In the instant matter, without a motion to sever filed by *any* Defendant, let alone Defendant Alex Anthony Martinez, and without the United States having had the opportunity to respond thereto or the Court having had the opportunity to analyze those arguments, the Court has essentially allowed the *de facto* severance of Defendant Alex Anthony Martinez. Based on the law throughout, and the corresponding analysis, the Court should vacate the July 21, 2025 trial currently set for Defendant Alex Anthony Martinez and place him on the same trial track as his co-Defendants. In more certain terms, properly rejoining this Defendant with his co-conspirators does not violate the Speedy Trial Act or the Sixth Amendment, nor does it offend the Rules of Criminal Procedure governing joinder.

### A. The Speedy Trial Act and Sixth Amendment

#### 1) *Baseline calculation for Defendant Alex Anthony Martinez*

Beginning with the Speedy Trial Act, a defendant, subject to certain exceptions, must be tried within seventy days of the filing of the indictment or the defendant's first appearance, whichever occurs later. 18 U.S.C. § 3161(c)(1). This seventy-day period is subject to various exclusions of time under 18 U.S.C. § 3161(h). Relevant here, ten days are excluded for "delay resulting from transportation of any defendant from another district." § 3161(h)(1)(F). Further relevant, § 3161(h)(6) excludes a "reasonable period of delay when the defendant is joined for trial with a codefendant as to whom the time for trial has not run and no motion for severance has been granted." And finally, § 3161(h)(7) (the "ends-of-justice subsection"), excludes "[a]ny period of delay resulting from a continuance granted by any judge . . . if the judge granted such continuance

7

on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial."

Checking the speedy trial clock in the instant matter, Defendant Heriberto Salazar Amaya first appeared in this district on May 23, 2025, which under §§ 3161(c)(1) and (h)(6), started the speedy trial calculation for all co-Defendants, including Defendant Alex Anthony Martinez. Using this date as the starting point, and not considering the tolling motions filed by the parties, *i.e.*, the opposed motion to designate the case as complex, Defendant Alex Anthony Martinez's trial would need to begin by August 1, 2025, unless the time is extended.

That extension came on July 3, 2025, when newly added co-Defendant Roberta Herrera boarded the SS Indictment, Doc. 242, thereby restarting the clock for all Defendants under 18 U.S.C. §§ 3161(c)(1) and (h)(6). *See United States v. Margheim*, 770 F.3d 1312, 1318–19 (10th Cir. 2014) (The general rule under § 3161(h)(6) is that all defendants who are joined for trial fall within the speedy trial computation of the latest co-defendant joined.); *see also United States v. Zar*, 790 F.3d 1036, 1043 (10th Cir. 2015) ("[I]n light of its denial of the severance motion, the court held that the [defendants] remained subject to § 3161(h)(6) . . . ."). Defendant Misael Lopez-Rubio's initial and arraignment on the SS Indictment is also set for July 10, 2025, further extending matters. Given that no motion to sever has been granted, the 70-day trial clock would currently sit at September 11, 2025, and will shift to September 18, 2025 following Lopez-Rubio's hearing.

2) *Defendants' motion to continue further excludes Defendant Alex Anthony Martinez's speedy trial time*

Regardless of the September date, which alone is dispositive, any delay to the currently scheduled July 21, 2025, trial will still be excluded because it is attributable to Defendant Alex Anthony Martinez's co-defendants under § 3161(h)(6). That is, "[w]hen the delay is reasonable, an exclusion for delay attributable to one defendant is applicable to all co-defendants." *United*

8

*States v. Thomas*, 749 F.3d 1302, 1308 (10th Cir. 2014) (quotation marks, brackets and citation omitted). Here, Defendants Heriberto Salazar Amaya, Cesar Acuna-Moreno, Bruce Sedillo, Vincent Montoya, Francisco Garcia, David Anesi, George Navarrete-Ramirez, Jose Luis Marquez, Nicholas Tanner, Brian Sanchez, Alan Singer, David Altamirano Lopez, and Kaitlyn Young all moved successfully to continue trial to October 2025. Thus, any delay to Defendant Alex Anthony Martinez's desired one-defendant trial on July 21, 2025, is attributable to his co-Defendants, members of the conspiracy and continuing criminal enterprise in which Martinez operated and for which he is charged, and is reasonable under the Speedy Trial Act.

To be sure, for Speedy Trial Act purposes, the Tenth Circuit has articulated three factors to guide district courts in the reasonableness inquiry: (1) whether the defendant is free on bond, (2) whether the defendant zealously pursued a speedy trial, and (3) whether the circumstances further the purpose behind the exclusion to "accommodate the efficient use of prosecutorial and judicial resources in trying multiple defendants in a single trial." *Margheim*, 770 F.3d at 1319.

That Defendant Alex Anthony Martinez is in custody and has attempted to assert his speedy rights, albeit to create a severance issue without actually moving to sever, does not alter the analysis. At the risk of stating the obvious, trying all co-defendants together in this 31-Count, massive continuing criminal enterprise and conspiracy matter is necessary to accommodate the efficient use of prosecutorial and judicial resources. "The obvious purpose behind [the co-defendant] exclusion is to accommodate the efficient use of prosecutorial and judicial resources in trying multiple defendants in a single trial." *United States v. Theron*, 782 F.2d 1510, 1514 (10th Cir. 1986).[8] This is why courts have held that there is "strong presumption favoring trying properly joined defendants together." *Zar*, 790 F.3d at 1043; *see also Zafiro v. United States*, 506 U.S. 534,

---

[8] 18 U.S.C. § 3161 was amended in 2008. Prior to the amendment, which is when *Theron* was decided, the co-defendant exclusion was found in § 3161(h)(7). After 2008, that exclusion moved to § 3161(h)(6).

9

537 (1993). "A single trial is ideal when the government plans to recite a single factual history, put on a single array of evidence, and call a single group of witnesses." *Margheim*, 770 F.3d at 1319 (quotation marks and citations omitted) (brackets added); *see also United States v. Tranakos*, 911 F.2d 1422, 1426 (10th Cir. 1990) ("[T]his is such a case [where a single trial is preferred], for the defendants were charged with a single conspiracy.").

And in conspiracy cases, courts "indulge a presumption that co-conspirators . . . should be tried together." *United States v. Clark*, 717 F.3d 790, 817 (10th Cir. 2013) (quoting *United States v. Pursley*, 577 F.3d 1204, 1215 (10th Cir. 2009)). Indeed, joint trials are preferred because "[t]hey promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." *United States v. Hall*, 473 F.3d 1295, 1301 (10th Cir. 2007) (alteration in original) (quoting *Zafiro*, 506 U.S. at 537).

In this matter, Defendants are charged in a multi-state continuing criminal enterprise and conspiracy, complete with 42 interconnected Manner and Means, all of which will be proven through single, linear factual history, a single array of evidence, and a single group of witnesses. Or put another way, the United States' case is constant and the Defendants and evidence logically connected, and severance would result in identical hearings (like a *James* hearing) and trials, with the same evidence, same factual history, and same witnesses. As the facts above show, all Defendants are connected in a record-breaking multi-stale drug trafficking organization.

The Speedy Trial Act supports placing Defendant Alex Anthony Martinez on the same trial track as his co-defendants.

### B. The Sixth Amendment Supports Joining Defendant Alex Anthony Martinez with his Co-Defendants

The United States next addresses its request for joinder under the Sixth Amendment: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." U.S.

10

Const. amend. VI. To determine whether a trial delay violates a defendant's Sixth Amendment speedy trial right, federal courts must balance four factors: (1) the length of the delay, (2) the reason for the delay, (3) whether the defendant asserted his right to a speedy trial, and (4) whether the delay prejudiced the defendant. *United States v. Leveille*, No. 1:18-CR-2945-WJ, 2023 WL 4365427, at *2 (D.N.M. July 6, 2023) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)). Neither factor is determinative or necessary, but all four must be considered when determining whether a violation has occurred. *Id*. (citing *United States v. Seltzer*, 595 F.3d 1170, 1176 (10th Cir. 2010)). The Sixth Amendment factors likewise weigh in favor of placing Defendant Alex Anthony Martinez on the same trial track as his co-defendants.

1) *The length of delay is reasonable*

At this point, Defendant Alex Anthony Martinez has been under indictment for approximately two months, with the current triggering point for all Defendants' speedy trial clock being Defendant Roberta Herrera's appearance in this case on July 3, 2025. *See Margheim*, 770 F.3d 1312, 1318–19 (10th Cir. 2014) ("The general rule under this provision is that all defendants who are joined for trial fall within the speedy trial computation of the latest codefendant joined."). Nonetheless, shifting Defendant Alex Anthony Martinez's trial date to October 2025 from July 21, 2025 is still well within delays that the Tenth Circuit has deemed reasonable under the Sixth Amendment analysis. *See United States v. Leveille*, No. 1:18-CR-2945-WJ, 2023 WL 4365427, at *3 (D.N.M. July 6, 2023) (57-month delay reasonable under *Barker*); *United States v. Leveille*, No. 1:18-CR-02945-WJ, 2020 WL 4698511, at *7 (D.N.M. Aug. 13, 2020) (two-year delay reasonable under *Barker*); *United States v. Stephenson*, 2020 WL 3263445, at *2 (W.D.N.Y. June 17, 2020 compiling cases), *e.g*.,: *United States v. Ghailani*, 733 F.3d 29, 46-49 (2d Cir. 2013) (five-year delay); *United States v. Blanco*, 861 F.2d 773, 777-780 (2d Cir. 1988) (10-year delay); *see also United States v. Jones*, 91 F.3d 5, 9 (2d Cir. 1996) (collecting cases holding no speedy-

11

trial violation despite delays ranging from 28 months to six years). Accordingly, even presuming the delay as to Defendant Alex Anthony Martinez extends from July 2, 2025, to October 2025, which would be approximately six months from the first indictment, four months from the last Defendant joined, and three months from his requested trial date, we are still within the bounds of reason given the circumstances surrounding this complex, multi-state continuing criminal enterprise and conspiracy case.

But even if this Court finds this de minimis delay unreasonable, excessive delay "cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria." *Doggett*, 505 U.S. at 656. The criteria are all related factors and "must be considered together with such other circumstances as may be relevant." *Barker*, 407 U.S. at 533. In addition to the factors below, this case features an incredibly complex, interconnected fact pattern, with many co-conspirator statements/wire intercepts as well as admissions made by several Defendants. Thus, separate and apart from the fact that the investigation spanned several states and featured approximately 20 wires, it also carries with it several legal issues that need to be addressed before this matter can proceed to trial.

2) *The reason for delay is proper*

Courts engage in a two-part inquiry, asking (1) why the delay occurred, and (2) whether the government bears the responsibility for the delay. *United States v. Landa-Arevalo*, 104 F.4th 1246, 1256 (10th Cir. 2024), cert. denied sub nom. *Landa-Arevalo, Angel v. United States*, No. 24-5628, 2024 WL 4655070 (U.S. Nov. 4, 2024). "This factor weighs against the Government insofar as the Government contributed to the delay." *Id*. (citation omitted). "But if the government 'present[s] acceptable reasons for the delay' [courts] will hold this factor weighs against Defendant." *Id*. (quoting *Margheim*, 770 F.3d at 1326).

12

With this understanding, the reason underlying the instant request for joinder is not only proper, but necessary. Defendant Alex Anthony Martinez is part and parcel of the charged continuing criminal enterprise and conspiracy. And the United States under Rule 8 and Tenth Circuit case law enjoys a right to join and try defendants together, especially in conspiracy matters. Moreover, as stated above, the Speedy Trial Act enumerates several exclusions that contemplate this situation. Thus, given these understandings, the reason for any potential delay that results from joining Defendant Alex Anthony Martinez is proper and in no way related to gamesmanship, or even attributable to the United States. The United States is simply attempting to prosecute the case as charged in accordance with the Federal Rules of Criminal Procedure.

This factor weighs in favor of joinder.

3) *Speedy Trial assertion*

"The proper assessment under this factor is a question of timing—'[t]he sooner a defendant raises the speedy trial issue, the more weight this factor lends to his claim. This factor weighs against a defendant who . . . waits for months to assert his speedy trial right." *Landa-Arevalo*, 104 F.4th at 1256–57 (quoting *United States v. Larson*, 627 F.3d 1198, 1208 (10th Cir. 2010)). In this matter, Defendant Alex Anthony Martinez asserted his speedy trial rights to force a severance, *i.e.*, gamesmanship, and only did so when faced with a complex case designation.

4) *Defendants cannot show prejudice*

To finish the Sixth Amendment analysis, Defendant Alex Anthony Martinez has not and cannot show that he will be prejudiced by being joined with his co-Defendants. *See Black*, 830 F.3d at 1121 ("The individual claiming the Sixth Amendment violation has the burden of showing prejudice."). The Tenth Circuit has held that a "a six-year delay is per-se prejudicial if it is attributable to the government." *Landa-Arevalo*, 104 F.4th at 1257 (citations omitted). "So, Defendant[s] must 'make a particularized showing of prejudice' because the period of

13

Government-attributable delay is less than six years." *Id*. (citation omitted). The period of delay attributable to the Government in this matter is zero.

Nonetheless, courts analyze prejudice to a defendant in terms of three interests: (1) preventing oppressive pretrial incarceration; (2) minimizing concern and anxiety to the defendant; and (3) limiting the possibility that the defense will be impaired. *Gomez*, 67 F.3d at 1522. The most serious of these is impairment of the defense "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Barker*, 407 U.S. at 532; *United States v. Toombs*, 574 F.3d 1262, 1275 (10th Cir. 2009) (third factor is most important).

Focusing on the third, most important factor, this is a matter where any potential delay of the July 21, 2025 trial actually benefits the defense. It gives Defendant Alex Anthony Martinez more time to investigate and actually review the massive amount of discovery that has been produced, to address co-conspirator statements, to prepare a theory of defense for trial, and to engage in plea negotiations in a case that carries a potential mandatory sentence for Defendant of twenty years. All of these tasks are hampered by a setting approximately two weeks away, especially in light of defense counsel's out-of-state vacation on the eve of trial. *See* Doc. 247.

The Sixth Amendment supports placing Defendant Alex Anthony Martinez on the same trial track as his co-defendants.

### C. Joinder

In accordance with Rule 14(a) of the Federal Rules of Criminal Procedure, a court may order separate trials if joinder appears to prejudice a defendant. *See* Fed. R. Crim. P. 14(a). Rule 14(a) provides, in relevant part: "If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). Under Rule 14(a), then, the court may sever the

trials of co-defendants when "the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a); *see Zafiro v. United States*, 506 U.S. 534, 538 (1993) (using Rule 14 as the standard for a severance); *United States v. Cox*, 934 F.2d 1114, 1119 (10th Cir. 1991) (applying Rule 14 to set the standard for severance). The decision to sever is "within the sound discretion of the trial court." *Cox*, 934 F.2d at 1119 (citing *United States v. Valentine*, 706 F.2d 282, 289-90 (10th Cir. 1983)); *see also United States v. Gant*, 487 F.2d 30, 34 (10th Cir. 1973) (noting severance "is peculiarly within the discretion of the trial court") (citations omitted).

"Inasmuch as severance is a matter of discretion and not of right, the defendant must bear a heavy burden of showing real prejudice to his case." *United States v. McConnell*, 749 F.2d 1441, 1444 (10th Cir. 1984)). Again, "[j]oint trials of defendants who are indicted together are preferred, because 'they promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *Hall*, 473 F.3d at 1301-02 (quoting *Zafiro*, 506 U.S. at 537). Additionally, "a criminal defendant has no constitutional right to severance unless there is a strong showing of prejudice caused by a joint trial." *Cummings v. Evans*, 161 F.3d, 610, 619 (10th Cir. 1998) (citing *United States v. Youngpeter*, 986 F.2d 349, 353 (10th Cir. 1993)). The prejudice standard envisioned by Rule 14 thus requires a showing of actual prejudice, not merely a showing that a defendant "may have a better chance of acquittal in separate trials." *Pursley*, 474 F.3d at 766. To establish prejudice, a defendant must identify a "'specific trial right' that was compromised or show the jury was 'prevented . . . from making a reliable judgment about guilt or innocence.'" *Id*. at 766 (quoting *Zafiro*, 506 U.S. at 539). Significantly, "Rule 14 does not require severance even if prejudice is shown; rather, it leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Zafiro*, 506 U.S. at 538-39; *see also United States v. Gray*, 173 F.Supp.2d 1, 10 (D. D.C. 2001) (discussing general presumption in favor of joinder to

15

"preserve judicial resources and permit the jury to have a complete view of the evidence as possible.").

Even if prejudice can be shown, the trial court may "weigh the prejudice to a particular defendant caused by joinder against the obviously important considerations of economy and expedition in judicial administration." *United States v. Peveto*, 881 F.2d 884, 857 (10th Cir. 1989); *see also United States v. Bailey*, 952 F.2d 363, 365 (10th Cir. 1991) (quoting *United States v. Cardall*, 885 F.2d 665, 667-68 (10th Cir. 1989)). Ultimately, a trial court that denies a request for severance will be reversed only where a defendant demonstrates an abuse of discretion. *See Pursley*, 474 F.3d at 765.

Defendant cannot show that he was improperly joined and has not even pled such a claim. *See* Fed. R. Crim. Proc. 8 ("The indictment or information may charge two or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."); *United States v. Hall*, 473 F.3d at 1301-02 ("Joint trials of defendants who are indicted together are preferred because 'they promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'") (quoting *Zafiro*, 506 U.S. at 537)); *United States v. Hopkinson*, 631 F.2d 665, 668 (10th Cir. 1980) (Fed. R. Crim. P. 8(b) "is construed broadly to allow liberal joinder to enhance the efficiency of the judicial system"); 1A Wright, *et al.*, Fed. Practice & Procedure: Criminal § 144 ("All courts agree that a conspiracy count normally provides a sufficient allegation that the defendants engaged in the same series of acts or transactions, making joinder permissible. . . Not all of the defendants charged as conspirators need be charged on all substantive counts . . .").

Accordingly, if this matter proceeds to trial, the trial will involve a set of operative facts relevant to Defendants' continuing criminal enterprise and conspiracy with respect to those facts. A joint trial of Defendants would "promote economy and efficiency" and avoid "multiplicity of

16

trials [and pretrial and substantive motion hearings] without causing" "substantial prejudice to the right of the defendants to a fair trial." *Bruton v. United States*, 391 U.S. 132, 131 n.6 (1968).

The rules of Joinder support placing Defendant Alex Anthony Martinez on the same trial track as his co-Defendants.

### III.  CONCLUSION

The United States respectfully requests that Defendant Alex Anthony Martinez be re-joined with his co-Defendants for trial.

    Respectfully submitted,

    RYAN ELLISON
    United States Attorney

    *Electronically filed on July 3, 2025*
    MATTHEW J. McGINLEY
    ELAINE Y. RAMIREZ
    BLAKE NICHOLS
    RAQUEL RUIZ-VELEZ
    Assistant United States Attorneys
    201 3rd Street, Suite 900
    Albuquerque, New Mexico 87102
    (505) 346-7274

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on July 3, 2025, I filed the foregoing document electronically through the CM/ECF system. Pursuant to the CM/ECF Administrative Procedures Manual, §§ 1(a), 7(b)(2), such filing is the equivalent of service on parties of record.

*/s/*
MATTHEW J. McGINLEY
Assistant United States Attorney